IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| OLIVIA WALLER, | ) |
| | ) Case No. 4:03CV00039 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| THE CITY OF DANVILLE, VIRGINIA et al., | ) |
| | ) By: Jackson L. Kiser |
| Defendants. | ) Senior United States District Judge |
| | ) |

Before me is Defendants' Motion for Partial Summary Judgment [69]. For the reasons below, I hereby **GRANT** Defendants' Motion for Partial Summary Judgment.

## I. STATEMENT OF FACTS

The Plaintiff, Olivia Waller ("Waller"), is the sister of the decedent, Rennie Edward Hunt, Jr. ("Hunt") and the administrator of his estate. She brings this § 1983 action seeking damages from the City of Danville and other city officers ("officers") for committing acts that deprived the decedent of his constitutional rights. Plaintiff also seeks to recover under Virginia Code §§ 8.01-25 and 8.01-50 and the common law for assault, battery, intentional infliction of emotional distress, and gross negligence.

Rennie Hunt, a 67-year old retired laborer resided at an apartment on North Main Street in Danville. He was 5'4" tall and weighed 137 pounds. Hunt also suffered from a mental illness. On the evening of May 10, 2002, Hunt was with his long-time companion, Virginia Evans ("Evans"), in their apartment. On that same evening, the Danville Police Department received a call from Hunt's neighbor,

1

Teresa Jennings ("Jennings") that Evans was missing and likely being held against her will at Hunt's apartment.

The officers arrived at Hunt's apartment at approximately 9:30 p.m. The officers spoke with Jennings who said that she had not seen Evans in a couple of days and that Hunt had refused to allow her to see Evans. The police knocked on the front door, but there was no response. The police went around to the back door, and Hunt responded through the door with threats. The officers spoke with Evans through the door and she assured them that she was safe. Hunt refused to acknowledge Evans' condition. After continuing efforts to get him to allow Evans to come to the door, Hunt threatened to "blow [Officer Hugh Wyatt's] head off" if he didn't leave.

Thereafter, the police obtained an arrest warrant for the decedent based on the alleged assault on Officer Wyatt. The Danville Police Department's Emergency Response Team ("Emergency Response Team") served the arrest warrant. The Emergency Response Team arrived at Hunt's apartment at approximately midnight and announced that they had a warrant for Hunt's arrest. When Mr. Hunt did not emerge from the apartment, the Emergency Response Team decided to forcibly enter the apartment.

Police officers in full protective gear also used a battering ram to break down the ground floor and upstairs doors of the apartment. They threw flash-bang devices into the apartment as diversions. When the officers entered the apartment, the Plaintiff alleges that the officers found Hunt standing in an interior doorway in his underwear with a cane in his hand. The officers perceived that Hunt was holding a knife and a large metal pipe with a hook at the end or some sort of bladed instrument. The officers

2

warned Hunt to stop and drop his weapons, but Hunt kept advancing. The officers discharged their weapons, and their bullets struck Hunt at least four times. Hunt was transported to the Danville Regional Hospital where he died at approximately 1:30 a..m. on May 11, 2002.

Plaintiff filed this suit on April 30, 2003. She alleges the following violations under § 1983: (1) various constitutional violations under the Fourth and Fourteenth Amendments; (2) violations of the Americans with Disabilities Act; (3) conspiracy; (4) supervisory liability; (5) failure to intercede; (6) false arrest. In addition, Waller seeks damages for (1) assault and battery; (2) intentional infliction of emotional distress; and (3) gross negligence. She has also filed an action under Virginia's wrongful death statute.

Waller prays for the following relief: (1) an award of compensatory and punitive damages in the amount of $7.5 million; (2) an order requiring the Danville Police Department to reform its practices and procedures regarding the use of force in handling persons with mental illness; and (3) attorneys' fees and costs. The Plaintiff seeks punitive damages against those individual defendants sued in their individual capacities.

## II. DISCUSSION

### A. *Standard of Review*

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue

3

of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

    B.        *False Arrest*

I find that the officers are entitled to qualified immunity from Plaintiff's false arrest claims. Police officers may be liable for constitutional violations they commit, but they may also be entitled to qualified immunity when they are sued in their individual capacities. 42 U.S.C. § 1983; *see Brown v. Gilmore*, 278 F.3d 362, 366-67 (4th Cir. 2002). In evaluating a qualified immunity defense, the Fourth Circuit has held that a Court must determine whether a constitutional right would have been violated on the facts alleged, and, if so, whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right. *Id.* at 367.

> "To determine objective reasonableness, a court must consider what a 'reasonable officer on the scene' would have done. A court should consider factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or to others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"

*Milstead v. Kibler*, 91 F.Supp.2d 895, 899-900 (W.D.Va. 2000) (quoting *Sigman v. Town of*

4

*Chapel Hill*, 161 F.3d 782, 787 (4th Cir. 1998)).

With regards to false arrest claims, the Fourth Circuit has held that officers cannot be held liable when an arrest is perfected pursuant to a facially valid arrest warrant. *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). In Virginia, criminal assault is committed when the defendant intentionally puts the victim in well-founded fear or apprehension of bodily harm even though he may not actually intend to do bodily harm to the victim. *Burgess v. Commonwealth*, 136 Va. 607, 706-07 (1923).

Here, the officers obtained a warrant to arrest Hunt based on the alleged assault he committed when he threatened to blow an officer's head off. The officers could not see through the door, and it was reasonable to believe he had a gun necessary to carry out that threat. The facts indicate that Hunt wanted the officers to leave and threatened violence to accomplish that. Hunt intended to put the officer in fear of serious bodily harm, and apprehension resulted. Accordingly, the officers had probable cause to believe he had committed assault, and the warrant was valid.

Even if the warrant were deemed invalid, the officers still had a right to enter the apartment. Law enforcement officials may make warrantless entries into homes when a person's life or safety is reasonably believed to be in imminent danger. *United States v Masto*, 229 F.3d 1145 (4th Cir. 2000). The Seventh Circuit upheld a warrantless search of a "crack house" based on a report that a girl might be being held against her will. *United States v. Hughes*, 993 F.2d 1313, 1315 (7th Cir. 1993). In *Hughes*, the police responded to a call of a woman purporting to be the alleged hostage's mother and did not find the mother or the girl after searching the house. *Id.* Similar to *Hughes*, the officers in this case were responding to the call of a woman who believed that Hunt was holding Evans against her

5

will. When they arrived, Hunt had barricaded Evans and himself in the home and refused to let the police see her. They knew Hunt was mentally ill and had a prior history of violence. The perceived imminent threat to Evans was an exigent circumstance justifying the officers' entry.

Because the officers acted pursuant to a valid warrant and had probable cause to arrest Hunt, the officers did not falsely arrest Hunt and did not violate his constitutional rights in that regard. The officers are therefore entitled to qualified immunity on the false arrest claims.

C.  *Excessive Force*

I also find that the officers are entitled to qualified immunity on the excessive force claims. The Fourth Amendment bars police officers from using excessive force. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). A court evaluates an excessive force claim under a standard of "objective reasonableness." *Id.*

> An officer's use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, allowing for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. Thus, the objective facts must be filtered through the lens of the officer's perceptions at the time of the incident in question. This limits second-guessing the reasonableness of actions with the benefit of 20/20 hindsight and limits the need for decision-makers to sort through conflicting versions of the actual facts, and allows them to focus instead on what the police officer reasonably perceived.

*Milstead v. Kibler*, 243 F.3d 157, 163 (4th Cir. 2001). The Court must determine whether an officer had probable cause to believe that a suspect posed a threat of serious physical harm to the officer or others. *Milstead*, 91 F. Supp. 2d at 900.

6

The Fourth Circuit has held that the "reasonableness of the officer's actions in creating the dangerous situation is not relevant to the Fourth Amendment analysis; rather, reasonableness is determined based on the information possessed by the officer at the moment that force is employed." *Waterman v. Batton*, 393 F.3d 471, 475 (4th Cir. 2005) *citing Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996); *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991). Moreover, the failure to follow standard police procedure in making a lawful arrest is not relevant in a determination of whether officers applied excessive force because reasonableness is judged at the moment that force is applied. *Greenidge*, 927 F.2d at 792.

The officers in this case employed force upon their entry into the apartment. Their alleged failure to observe proper police protocol before entering the apartment is irrelevant in an evaluation of whether they applied excessive force because the alleged failures occurred well before the moment they employed force. And all of the facts pertaining to the actual encounter between Hunt and the officers indicate that the officers had an objectively reasonable belief that Hunt was a serious threat to their safety. When the officers entered the apartment, they were in a confined, dark, smoke-filled space. Hunt, a mentally ill man with a prior history of violence, immediately assaulted them with what they reasonably believed to be weapons in hand and approached rapidly swinging even after he was fired upon.

The facts in this case are similar to those in which the courts have granted qualified immunity. For example, in *Milstead*, police officers responded to call by a man who said that an intruder had stabbed his fiancee. *Milstead*, 91 F. Supp.2d at 897. When they arrived at his house, the officers saw

7

two people struggling but then had to tactically retreat outside the house. *Id.* One of the men inside shouted that the intruder was going to get ammo and ran outside the house where the officers mistakenly shot and killed him. *Id.* The District Court noted that the plaintiff was unable to point to any part of the record that indicated that the officer knew the man was unarmed and found that although "what happened was unfortunate, the court believes that a reasonable officer possessing the same information which Kibler possessed would have believed the force used was lawful under the circumstances." *Id.* Just as in *Milstead*, the officers in this case were faced with a split-second judgment in a volatile situation and Plaintiff cannot point to any part of the record which would indicate that they knew Hunt was unarmed. Moreover, Hunt was actually attacking the officers and advancing on them.

In *Sigman*, officers responded to a call from a man's fiancee who told them that the man was inside the house, out of control, and drunk. *Sigman*, 161 F.3d at 782. The man stepped outside the house with a knife and approached the officers who warned him to stop. *Id.* at 785. He kept advancing, and, when he was 10 to 15 feet away, one of the officers shot him twice and killed him. *Id.* The *Sigman* plaintiffs submitted affidavits from three eyewitnesses stating that they saw Sigman with his hands empty and raised in a sign of surrender, yet the Fourth Circuit still upheld summary judgment for the officers based on qualified immunity. *Id.* This case is an even stronger case for immunity because Hunt had something in hand, he was mentally unstable, he was closer in proximity, and visibility was even less clear. As in *Sigman*, I find that the officers reasonably perceived a threat and reacted accordingly.

Plaintiff argues that there are genuine issues of material fact because some evidence suggests a

different version of events. For instance, Plaintiff asserts that the screwdriver, one of the objects which the officers may have perceived as a weapon, was found in a separate room from the one in which Hunt was shot. However, the material issue in this case is not whether Hunt actually possessed the screwdriver but whether the officers reasonably perceived that he had some weapon in his hand. Courts have continually held that officers are entitled to qualified immunity if they reasonably perceive that a person is threatening with a weapon even if it is later found that the person did not actually have a weapon. *See McLenagan v. Karnes*, 27 F.3d 1002 (4th Cir. 2002); *see also Milstead*, F. Supp.2d at 897. Whether Hunt actually possessed the screwdriver is irrelevant.

Plaintiff also asserts that the fact that there was no paint transfer from Hunt's cane onto Officer Ford's helmet indicates that Hunt did not strike him. But the lack of paint transfer only shows that Hunt did not strike the officer hard enough to transfer paint. Officers Brown and Ford have stated that they witnessed Hunt strike Ford, and the Plaintiff has offered no facts to contradict these statements. In fact, Plaintiff has not shown any evidence that contradicts the aforementioned events.

Instead, Plaintiff argues that I should consider the events before the entry because the officers improperly escalated the situation and created a dangerous situation. Specifically, Plaintiff argues that an evaluation of the totality of the circumstances, as discussed by the Fourth Circuit in *Rowland v. Perry*, means an examination of the events leading up to the entry. *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). I disagree. In *Rowland*, the defendant officer grabbed, twisted, and punched the plaintiff whom he believed had misappropriated a five dollar bill. *Id.* The officer had contended that the plaintiff was resisting at the precise moment that he began to apply the force, but the Court explained that it had to consider the factors *in toto*, and that it was "impossible to escape the

9

conclusion that a man suffered a serious leg injury over a lost five dollar bill." *Id.* Contrary to Plaintiff's assertions, the *Rowland* Court was not inviting courts to examine every event leading up to an encounter, rather it was stressing the need for an examination for proportionality of the force applied to the circumstances. The situation in this case does not present a proportionality problem. Hunt been holding Evans against her will for two days and had a history of mental problems. He had threatened several officers. When the officers entered the dark, smoke-filled apartment, Hunt attacked them with what they reasonably perceived to be weapons. Even after they fired their initial rounds, he kept approaching. The officers reacted to this perceived threat with force, and I cannot say that it was disproportional in light of the circumstances. Therefore, I find that the officers' actions were objectively reasonable in light of the circumstances, and they are entitled to qualified immunity from the excessive force claims.

## CONCLUSION

For the reasons stated above, an Order granting Defendants' Motion for Summary Judgment will be entered. The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 5th day of July, 2005.

s/Jackson L. Kiser  
Senior United States District Judge