IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| OLIVIA WALLER, | ) |
| | ) Case No. 4:03CV00039 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| CITY OF DANVILLE, VIRGINIA et al., | ) |
| | ) By: Jackson L. Kiser |
| Defendants. | ) Senior United States District Judge |
| | ) |

Before the Court is the *Defendant's Motion to Dismiss or for Summary Judgment* [116] which was filed on August 23, 2005 and argued before the Court on November 17, 2005. Also before the Court is the *Plaintiff's Motion to Compel Discovery* [135] which was filed on November 16, 2005. For the reasons stated below, the *Defendant's Motion to Dismiss or for Summary Judgment* will be **granted** and the *Plaintiff's Motion to Compel Discovery* will be **dismissed** from the docket of this Court.

## I. STATEMENT OF FACTS

The facts are stated in the Court's *Memorandum Opinion*, dated July 5, 2005, as follows:

Olivia Waller ("Plaintiff") is the sister of the decedent, Rennie Edward Hunt, Jr. ("Hunt") and the administrator of his estate. She brings this 42 U.S.C. §1983 action seeking damages from the City of Danville and other city officers ("Defendants") for committing acts that deprived the decedent of his constitutional rights and certain federal statutory rights. Plaintiff also seeks to recover under Virginia Code §8.01-25, Virginia Code §8.01-50, and the Virginia common law for assault, battery, intentional infliction of emotional distress, and gross negligence.

Hunt, a 67-year old retired laborer resided at an apartment on North Main Street in

Danville. He was 5'4" tall and weighed 137 pounds. Hunt also suffered from a mental illness. On the evening of May 10, 2002, Hunt was with his long-time companion, Virginia Evans, in their apartment. On that same evening, the Danville Police Department received a call from Hunt's neighbor, Teresa Jennings, that Evans was missing and likely being held against her will at Hunt's apartment.

The officers arrived at Hunt's apartment at approximately 9:30 p.m. The officers spoke with Jennings who said that she had not seen Evans in a couple of days and that Hunt had refused to allow her to see Evans. The police knocked on the front door, but there was no response. The police went around to the back door, and Hunt responded through the door with threats. The officers spoke with Evans through the door and she assured them that she was safe. Hunt refused to acknowledge Evans' condition. After continuing efforts to get Hunt to allow Evans to come to the door, Hunt threatened to "blow [Officer Hugh Wyatt's] head off" if the officers refused to leave.

Thereafter, the police obtained an arrest warrant for Hunt based on the alleged assault on Officer Wyatt. The Danville Police Department's Emergency Response Team ("ERT") served the arrest warrant on Hunt. The ERT arrived at Hunt's apartment at approximately midnight and announced that they had a warrant for Hunt's arrest. When Hunt did not emerge from the apartment, the ERT decided to forcibly enter the apartment.

Police officers in full protective gear also used a battering ram to break down the ground floor and upstairs doors of the apartment. The officers threw flash-bang devices into the apartment as diversions. When the officers entered the apartment, the Plaintiff alleges that the officers found Hunt standing in an interior doorway in his underwear with a cane in his hand.

Page -2-

The officers perceived that Hunt was holding a knife and a large metal pipe with a hook at the end or some sort of bladed instrument. The officers warned Hunt to stop and drop his weapons, but Hunt kept advancing. The officers discharged their weapons, and their bullets struck Hunt at least four times. Hunt was transported to the Danville Regional Hospital where he died at approximately 1:30 a..m. on May 11, 2002.

**II. PROCEDURAL HISTORY**

The Plaintiff filed this suit on April 30, 2003. On September 29, 2003, I issued an *Order* limiting discovery in this case to matters directly related to the issue of whether qualified immunity should be granted to the Defendant officers. On November 22, 2004, the Defendants filed a *Motion for Partial Summary Judgment*. A hearing on the Defendant's *Motion* was held before the Court on June 21, 2005. On July 5, 2005, I entered an *Order* and *Memorandum Opinion* granting the *Defendants' Motion for Partial Summary Judgment*. In granting the *Motion*, I ruled that the individual officers were entitled to qualified immunity as to the Plaintiff's claims of false arrest and excessive force.

I found that the officers in this case acted pursuant to a valid warrant and had probable cause to arrest Hunt. I concluded that the officers did not falsely arrest Hunt, and therefore did not violate Hunt's constitutional rights. Based on these findings, I held that the officers were entitled to qualified immunity from the Plaintiff's false arrest claims.

I also found that the force used by the officers was not disproportional in light of the circumstances, but that the officers acted objectively reasonably in light of the circumstances. I concluded that the officers did not use excessive force. Based on these findings, I held that the officers were entitled to qualified immunity from the Plaintiff's excessive force claims.

Now before the Court is the *Defendants' Motion to Dismiss or for Summary Judgment*. The Defendants ask the Court to grant their *Motion* based upon the findings and rulings I set out in my *Order* and *Memorandum Opinion* dated July 5, 2005. The *Defendants' Motion to Dismiss or for Summary Judgment* was filed on August 23, 2005. The Plaintiff filed a *Response in Opposition to the Defendants' Motion to Dismiss or for Summary Judgment* on September 6, 2005. The Defendants filed a *Reply Brief in Support of Motion to Dismiss or for Summary Judgment* on September 13, 2005. The Defendants' *Motion* was argued before me on November 17, 2005.

Also before the Court is the *Plaintiff's Motion to Compel Discovery* which was filed on November 16, 2005; a *Response* was filed by the Defendants on November 30, 2005, and a *Reply* was filed by the Plaintiff on December 7, 2005.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247- 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate; that is, the moving party is entitled to

judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**IV. DISCUSSION**

      **A. Summary Judgment Should Be Entered for All Federal Claims**

As stated above, the *Order and Memorandum Opinion* that I issued on July 5, 2005 ("*Memorandum Opinion*"), contained a finding that the Defendant officers in this case did not falsely arrest Hunt or use excessive force against him. In so finding, it necessarily follows that the Defendant officers did not violate Hunt's Constitutional rights. Therefore, I granted qualified immunity to the Defendant officers in my *Memorandum Opinion.*

On page four of my *Memorandum Opinion*, I cited the Supreme Court's test for evaluating whether qualified immunity should be granted:

> In evaluating a qualified immunity defense, the Fourth Circuit has held that a Court must determine whether a constitutional right would have been violated on the facts alleged, and, if so, whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right. *Brown v. Gilmore*, 278 F. 3d 362, 366 - 367 (4th Cir. 2002), citing *Saucier v. Katz*, 533 U.S. 194 (2001).

The Fourth Circuit recently issued an opinion on November 15, 2005 in *Wilson v. Flynn* – a case that originated in North Carolina and is not yet cited – where the Court reiterated and followed the test for qualified immunity found in *Saucier* and cited by *Brown*:

> A court must first decide "whether a constitutional right would have been violated on the facts alleged." *Saucier*, 533 U.S. at 200. If so, then a court must determine if that right was clearly established at the time of the alleged violation. *Id.* But "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. at 201.

By finding in my earlier *Memorandum Opinion* that no false arrest was made by the Defendant officers and that no excessive force was used by them, I found that the officers did not

Page -5-

violate Hunt's constitutional rights. My finding that the officers did not violate Hunt's constitutional rights satisfied the first step in the Supreme Court's test for qualified immunity. Therefore, I ruled that qualified immunity should be extended to the Defendant officers in this case for purposes of the Plaintiff's false arrest and excessive force claims.

In its *Memorandum in Support* of its *Motion* now before the Court, the Defendants cite the Supreme Court case of *City of Los Angeles v. Heller* for the proposition that when a finding is made that a police officer has not violated the constitutional rights of a citizen, then the supervisors, department, or municipality for whom or for which the officer works cannot be held liable for a constitutional violation. 475 U.S. 796, 799 (1986).

In *Heller*, the plaintiff brought a civil rights action against two city police officers, members of the city police commission, and the city. The plaintiff claimed that he had been arrested without probable cause and that he was a victim of excessive force. The case was sent to a jury after one officer was granted summary judgment. After the jury returned a general verdict for the police officer who remained a defendant, a U.S. District Court for the Central District of California dismissed the action against the city and members of the police commission. On the plaintiff's appeal, the Ninth Circuit reversed and remanded the case. The Supreme Court then held that the jury's finding, that the police officer inflicted no constitutional injury on the plaintiff, removed any basis for liability against the city and members of the police commission. The Supreme Court held that the city and its police commission "were sued only because they were thought legally responsible for [the police officer's] actions; if the latter inflicted no constitutional injury on the respondent, it is inconceivable that petitioners could be liable to respondent." *Id*.

The Fourth Circuit in *Sigman v. Town of Chapel Hill* came to a result similar to that of the Supreme Court in *Heller*. 161 F.3d 782, 788 (4th Cir. 1998). In *Sigman*, the parents of a suspect who was fatally shot by Chapel Hill police officers brought a 42 U.S.C. §1983 action against the town and the police officers alleging both excessive force in violation of the U.S. Constitution and wrongful death under North Carolina law. The U.S. District Court for the Middle District of North Carolina granted *Summary Judgment* for the Defendants, and the plaintiff appealed to the Fourth Circuit. The Fourth Circuit affirmed, holding:

> Because we conclude that Office Riddle's actions were reasonable, we need not address in any great length the plaintiffs' federal claims against the police department, the chief of police, and the town of Chapel Hill because "[i]n the absence of any underlying use of excessive force . . . , liability cannot be placed on either the non-shooting officers, a supervisor, or the City." *quoting Hinkle v. City of Clarksburg,* 81 F.3d 416, 420 (4th Cir. 1996).

The Supreme Court precedent from *Saucier* and *Heller* and the appurtenant Fourth Circuit precedent from *Sigman*, when read together, requires that I grant *Summary Judgment* in this case for the Defendants as a matter of law. In this case I have previously found that the Defendant officers did not falsely arrest or use excessive force against Hunt, but that they acted objectively reasonably. Therefore, I found that the Defendant officers did not violate the constitutional rights of Mr. Hunt – the first step in the two-step analysis from *Saucier* for determining whether officers should be granted qualified immunity. The precedent from *Heller* makes clear that, based on my prior findings that the Defendant officers did not violate Hunt's constitutional rights, the Plaintiff's charges of constitutional violations cannot proceed against the Defendant officers in their official capacities, or against the people or entities under whom or under which the Defendant officers work.

In her *Response in Opposition*, the Plaintiff contends that Rule 56(f) of the *Federal Rules*

*of Civil Procedure* gives her the right to object to a premature filing of the *Motion for Summary Judgment*, and requires that she be given more time to complete discovery before the *Motion for Summary Judgment* now before the Court can be considered. The Plaintiff makes this argument because I limited discovery in this case, by *Order* dated September 29, 2003, to matters directly related to the issue of whether the Defendant officers' should be granted qualified immunity from the Plaintiff's claims of false arrest and excessive force.

The Defendants' filing a *Motion for Summary Judgment* in this case is timely, and granting the Plaintiff more time for discovery is unnecessary. The Plaintiff had the unfettered ability to pursue discovery on any matter than concerned the Defendant officers' qualified immunity before the June 21, 2005 hearing on the *Defendants' Motion for Partial Summary Judgment*. It was after hearing evidence from both parties at the June 21, 2005 hearing that I entered the aforementioned *Memorandum Opinion*, dated July 5, 2005, in which I found that the Defendant officers did not violate Mr. Hunt's constitutional rights, and therefore should be granted qualified immunity from the Plaintiff's claims of false arrest and excessive force.

The Defendants now ask the Court to grant their *Motion for Summary Judgment* based solely on the findings and conclusions found in my prior *Memorandum Opinion*. The law relevant in this case directs me to grant the *Defendants' Motion for Summary Judgment* based on my prior findings while denying the Plaintiff's request to conduct more discovery. The Plaintiff argues that further discovery is warranted to develop the allegations that, as a matter of custom, supervisory training and oversight of the Defendant officers was lax. However, because I have already determined there was no improper action by the officers, evidence of custom is irrelevant. The Plaintiff had every opportunity to explore the events which led to the actions that

culminated in the death of Hunt before I found that the Defendant officers did not violate Hunt's constitutional rights, for purposes of a qualified immunity analysis, in my prior *Memorandum Opinion*. Therefore, I deny the Plaintiff's request, which she bases on Rule 56(f) of the *Federal Rules of Civil Procedure,* because further discovery is unnecessary in this case.

In her *Response in Opposition*, the Plaintiff concedes that five Counts included in her *Complaint* should be dismissed because the Counts are based on her claims of false arrest and/or excessive force. The Plaintiff makes the concession because of my prior findings that the Defendant officers did not falsely arrest or use excessive force against Hunt. The five Counts are II, V, IX, X, and XI. For the reasons stated above, I agree with the Plaintiff and enter *Summary Judgment* for the Defendant as a matter of law on Counts II, V, IX, X, and XI.

The Counts involving federal claims which are in dispute for purposes of the *Defendant's Motion to Dismiss or for Summary Judgment* now before the Court are Counts I, III, IV, VI, VII, and VIII.

*Summary Judgment* will be granted for the Defendants as a matter of law on Count I because it requires a finding that the Defendant officers violated the rights guaranteed to Hunt by the Fourth and Fourteenth Amendments to the United States Constitution. This Count alleges, in part, that the Defendant supervisors and the City were motivated by Hunt's race and disability in taking the illegal action. However, if the actions of the officers themselves were not illegal, then their motivation is irrelevant.

As stated above, the Supreme Court in *Saucier v. Katz* established that the first step in the analysis for determining whether qualified immunity should be granted is to determine whether the officers violated a constitutional right. 533 U.S. 194 (2001). *The City of Los Angeles v.*

*Heller* stands for the proposition that if a finding is made that the officers did not violate a constitutional right, then their supervisors, departments, and/or municipalities under whom and under which they work can not be found to have violated a constitutional right. 475 U.S. 796 (1986). In this case, my previous ruling found that the Defendant officers did not violate Hunt's constitutional rights because they neither falsely arrested nor used excessive force against Hunt, but instead acted objectively reasonably. Without the predicate constitutional violation, a claim against the City and supervisors must fail.

*Summary Judgment* will be granted for the Defendants as a matter of law on Count III because it requires a finding that the City of Danville did not properly train the Defendant officers. In this case, the City of Danville Police Department training policies are irrelevant. As previously stated, the Defendant officers themselves did not violate the constitutional rights of Hunt. Thus, a lack of training of the officers is irrelevant.

*Summary Judgment* will be granted for the Defendants as a matter of law on Count IV which requires a finding that the Defendant officers discriminated against Hunt by falsely arresting him, using excessive force against him, and that the Defendant officers were improperly trained on how to deal with a person suffering from mental illness. For reasons stated above, because the actions of the officers were constitutionally permissible and therefore legally permissible, there can be no violation of the *Americans with Disabilities Act*.

*Summary Judgment* will be granted for the Defendants as a matter of law on Count VI because it requires a finding that the Defendant officers subjected Hunt to discriminatory treatment on the basis of race by using excessive force. The Court's finding that the Defendant officers did not use excessive force against Hunt, but instead acted objectively reasonably,

forecloses the claim.

*Summary Judgment* will be granted for the Defendants as a matter of law on Count VII because it requires a finding that the Defendant officers conspired to violate Hunt's constitutional rights by falsely arresting him and using excessive force against him. For reasons stated above, this claim must fail.

*Summary Judgment* will be granted for the Defendants as a matter of law on Count VIII because it requires a finding that improper training of the Defendant officers by the City of Danville Police Department led to the Defendant officers falsely arresting and using excessive force against Hunt. As discussed above, there is no predicate violation to support this claim.

For the reasons stated above, *Summary Judgment* shall be entered for the Defendants as a matter of law for the following Counts involving federal claims found in the Plaintiff's *Complaint*: I, II, III, IV, V, VI, VII, VIII, IX, X, and XI.

### B.  Summary Judgment Should Be Entered for State Claims

In their *Motion for Summary Judgment*, the Defendants also ask the Court to grant *Summary Judgment* on the state claims made by the Plaintiff in Counts XII, XIII, XIV, and XV of her *Complaint*. In their *Motion,* the Defendants cite relevant Western District of Virginia and Fourth Circuit precedent that instructs the Court to grant *Summary Judgment* for the Defendants.

In *Sigman v. Town of Chapel Hill*, the Fourth Circuit upheld the dismissal of a wrongful death claim brought under state law because of a finding that the officer's actions were objectively reasonable: "because we have concluded that [the officer's] actions were, as a matter of law, reasonable in the circumstances of this case, they cannot be negligent or wrongful, as required by [the North Carolina wrongful death statute] . . . the plaintiffs have no state law

claim." 161 F.3d 782, 789 (4th Cir. 1998).  Furthermore, in *Milstead v. Kibler* the Fourth Circuit affirmed  a Western District of Virginia opinion that had concluded in the context of a 42 U.S.C. §1983 action that "[i]f the Fourth and Fourteenth Amendment claims are decided in favor of the defendants on their motion for summary judgment, the state law claims should also be dismissed."  91 F.Supp.2d  895, 901, aff'd, 243 F.3d 157 (4th Cir. 2001).

*Summary Judgment* will be granted for the Defendants as a matter of law on Count XII because it requires a finding that the Defendant officers "embarked on a willful, malicious, reckless and outrageous course of conduct," and that the Defendant officers' "aggressive and violent attack on a 67 year old, mentally ill man offends generally accepted standards of decency and morality."  As discussed above, because the actions of the officers were legally permissible, the Defendants are not liable on a claim of intentional infliction of emotional distress.

*Summary Judgment* will be granted for the Defendants as a matter of law on Count XIII because it requires a finding that the Defendant officers did not act reasonably, but acted "in a wanton and willful manner, exhibiting such carelessness and recklessness as to evince a conscious disregard for the life and safety of Hunt."  Count XIII also requires a finding that the Defendant officers illegally sought and obtained an arrest warrant for Hunt.  As stated above, the Defendant officers acted objectively reasonably and did not falsely arrest Hunt.  Therefore, the indisputable facts in this case cannot render the Defendants liable on a claim of gross negligence.

*Summary Judgment* will be granted for the Defendants as a matter of law on Counts XIV and XV because both Counts require a finding that the Defendants acted wrongfully and negligently toward Hunt and violated his constitutional rights.  A survivor's cause of action under Virginia Code §8.01-25, and a wrongful death action under Virginia Code §8.01-50,

require negligent, intentional, or reckless conduct. However, because of the Court's prior finding of facts, the Plaintiff cannot prove that such conduct occurred.

For the reasons stated above, *Summary Judgment* shall be entered for the Defendants as a matter of law for the following Counts concerning state claims found in the Plaintiff's *Complaint*: XII, XIII, XIV, and XV.

### C. Plaintiff's Motion to Compel Discovery is Moot

The Plaintiff filed a *Motion to Compel Discovery* with this Court on November 16, 2005. The *Motion* is hereby dismissed as moot because I am herein granting *Summary Judgment* for the Defendants based on facts already found in the prior proceeding. Therefore, further discovery in this case is unnecessary.

## V. CONCLUSION

When viewed in the light most favorable to the Plaintiff, the material facts in this case are not in dispute. An *Order* will be entered **granting** the *Defendant's Motion for Summary Judgment* and **dismissing** the *Plaintiff's Motion to Compel Discovery* from the docket of this Court.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 12th day of December, 2005.

s/Jackson L. Kiser
Senior United States District Judge