IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| OLIVIA WALLER, Administrator of the Estate of Rennie Edward Hunt, Jr., deceased | Case No. 4:03CV00039 |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| THE CITY OF DANVILLE, VIRGINIA, | By: Jackson L. Kiser Senior United States District Judge |
| Defendant. | |

Before me is Defendant's *Motion for Summary Judgment*. For the reasons below, I will **GRANT** Defendant's *Motion for Summary Judgment*.

## I.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The relevant factual background of this case is adequately summarized in my prior opinion on this matter granting summary judgment for the Defendants in this case, *Waller v. City of Danville*, No. 4:03CV00039[140], 2005 U.S. Dist. LEXIS 34584 (W.D. Va. Dec. 12, 2005), and in the opinion of the United States Court of Appeals which affirmed in part and reversed in part my decision. 212 Fed. Appx. 162 (4th Cir. 2006).[1]

This case was remanded by the Fourth Circuit for "further delineation of the discrimination claims by the plaintiff, inquiry by the district court and, if necessary, discovery into the claims as articulated by plaintiff." *Id.* at 173-74. The primary focus on remand has been

---

[1] Refer also to my earlier unpublished opinion, No. 4:03CV00039[105] (W.D. Va. July 5, 2005), granting Defendants' *Motion for Partial Summary Judgment* with respect to Plaintiff's claims of false arrest and excessive force, due to the Defendant-Officers' valid assertion of qualified immunity in their individual capacities.

Plaintiff's Americans with Disabilities Act ("ADA") claim. The Court of Appeals expressed "no opinion as to the parameters of plaintiff's ADA claim, whether the ADA would apply to the facts of this case or the claim as ultimately defined, or the ultimate merits of any such claim." *Id.* at 173. Although discovery was authorized on remand for Plaintiff's race discrimination claim as well, that claim has been dismissed with prejudice along with any other claims except those under the ADA, by stipulation of the parties. Order Dismissing with Prejudice All Counts Other than Count IV of the Amended Complaint and All Defendants Other than the City of Danville, VA, *Waller v. City of Danville*, No. 03-00039[224] (W.D. Va. September 27, 2007).

Extensive discovery has been conducted on plaintiff's ADA claim. That claim is essentially that Rennie Hunt ("Hunt") should have been reasonably accommodated by the officers of the Danville Police Department ("DPD") during the course of their investigation into his taking Virginia Evans ("Evans") hostage, prior to Hunt's threat upon the life of Lt. Wyatt. Alternatively, Plaintiff claims that the DPD failed to adequately train or supervise its officers in complying with the ADA, leading to Hunt's death.

Defendant brought this *Motion to Dismiss or for Summary Judgment* on August 31, 2007. Plaintiff responded with a brief in opposition on September 14, 2007, followed by Defendant's reply brief on September 21, 2007. I held a hearing on this matter in Danville on September 27, 2007.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247- 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate; that is, the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. *The Americans with Disabilities Act (ADA)*

Title II of the ADA requires that all public entities in the United States take affirmative steps to reasonably accommodate qualifying individuals with disabilities, as defined by the statute. 42 U.S.C. § 12132. Courts have liberally interpreted the definition of a "public entity," which includes "any department, agency, special purpose district, or other instrumentality of a . . . local government," 42 U.S.C. § 12131(1)(B), to include state-run prisons as well as local police forces. *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *Gorman v. Bartsch*, 152 F.3d 907, 912 (8th Cir. 1998) (interpreting *Yeskey* and holding that a police department was a "public entity" under the ADA).

To make out a prima facie case for a violation of the ADA by a "public entity," a plaintiff

must show that: (1) plaintiff is a qualified individual with a disability[2]; (2) plaintiff was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of plaintiff's disability. *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999).

### B.   *Claim for Reasonable Accommodation During a Hostage Investigation*

There are roughly two types of cases in which the ADA imposes affirmative duties on police officers dealing with a suspect or arrestee who is a qualified individual with a disability: cases of wrongful arrest and cases of reasonable accommodation. Wrongful arrest cases involve the arrest of a disabled person based on lawful conduct attributable to the person's disability, such as when a person is arrested by an officer misperceiving the effects of the person's disability as illegal conduct. *See, e.g.*, *Jackson v. Town of Sanford*, No. 94-12-P-H, 1994 WL 589617 (D. Me. Sept. 23, 1994) (plaintiff arrested after officer misperceived the effects of a stroke as indicating he was driving while intoxicated). Reasonable accommodation cases, on the other hand, involve the failure of police to reasonably accommodate a qualified individual's disability in the course of an investigation or arrest. *See, e.g.*, *Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998) (paraplegic arrestee properly alleged ADA violation after suffering injuries while being transported to jail in a van not equipped for wheelchair transport); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 555-56 (D. N.J. 2000) (plaintiff stated a valid ADA claim where police questioned plaintiff at the station house without making a reasonable

---

[2] Defendants argue strenuously that Hunt is not a "qualified individual" under the Act. Because I will grant the Defendants' motion on other grounds, I need not reach this issue.

Case 4:03-cv-00039-JLK-mfu   Document 227   Filed 10/02/07   Page 4 of 9   Pageid#: 3237

accommodation for her deafness).

Notably, courts have found situations of exigent circumstances beyond the scope of the ADA's requirement of reasonable accommodation. *See Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) ("Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life"); *Thompson v. Williamson County*, 219 F.2d 555, 558 (6th Cir. 2000) ("if the decedent was denied access to medical services it was because of his violent, threatening behavior, not because he was mentally disabled"); *see also Patrice v. Murphy*, 43 F. Supp. 2d 1156, 1160 (W.D. Wash. 1999) (no ADA claim where deaf individual arrested without a translator present); *Crocker v. Lewiston Police Dep't*, No. 00-13-P-C, 2001 U.S. Dist. LEXIS 25872, at *27-28 (D. Me. Feb. 9, 2001) (following *Patrice*).

Exigent circumstances, for the purposes of this exception, apply whenever the police, whether in the course of an arrest or investigation, reasonably believe that any officer or third party's life is in danger. *See Hainze*, 207 F.3d at 801; *Sudac v. Hoang*, 378 F. Supp. 2d 1298, 1306 (D. Kan. 2005); *McCray v. City of Dothan*, 169 F. Supp. 2d 1260, 1275 (M.D. Ala. 2001) ; *cf. Salinas v. City of New Braunfels*, No. SA-06-CA-729-XR, 2006 U.S. Dist. LEXIS 91082, at *14 (W.D. Tex. Dec. 18, 2006) ("Viewing the facts in the light most favorable to Plaintiff, the scene was secure shortly after the police arrived, Plaintiff did not pose a threat to the safety of the officers, and Plaintiff requested reasonable accommodations for her disability, which were denied to her.").

Construing the facts with all reasonable inferences in favor of the Plaintiff, here the

police officers were clearly acting under exigent circumstances. Virginia Evans had been missing for days, and Hunt's neighbor was concerned for her safety. Hunt would not allow Evans to come to the door when the police asked to speak with her. The officers did not know if Hunt was armed, but were forewarned by him that, "[i]f you come in here, I've got something for you," in addition to other threatening language they heard that evening during their investigation. At this point, the police reasonably believed that this was a potentially violent hostage situation, and that Evans was in danger. This suffices to create exigent circumstances, a situation in which the ADA does not require reasonable accommodations from the police.

In this case, the officers of the DPD did not mistakenly confuse Hunt's behavior due to his disability with illegal activity such as drunkenness, which would be precisely the kind of discrimination prohibited by the ADA if it had occurred. *See Bircoll v. Miami-Dade County*, 410 F. Supp. 2d 1280, 1284 (S.D. Fla. 2006) (denying ADA claim where plaintiff "was not arrested because his disability was mistaken for criminal conduct . . . [but instead] the arrest was due to his erratic and suspicious driving"). The "reasonable accommodation" theory under the ADA cannot apply because exigent circumstances existed at the time of the investigation, even prior to the attempted execution of the arrest warrant on Hunt by the Emergency Response Team. "To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and *any nearby civilians*, would pose an unnecessary risk to innocents." *Hainze*, 207 F.3d at 801 (emphasis added). A police officer's first sworn duty is to protect innocent lives, and if "the officers had waited and Evans had been harmed, they would have been faulted all the more through the lens of hindsight." *Waller v. City of Danville*, 212 Fed. Appx. at 176 (Wilkinson, J.,

concurring in part and dissenting in part).

Even assuming *arguendo* that the officers were required to offer Hunt reasonable accommodations and that conditions prior to the execution of the arrest warrant did not constitute exigent circumstances, Plaintiff's claim under the ADA still must fail. As has been held by this court and by the Fourth Circuit, the actions of the officers in attempting to arrest Hunt were reasonable under the circumstances and what transpired prior to that time becomes irrelevant and cannot support a claim against the Defendant.

Therefore, I must grant summary judgment on Plaintiff's ADA claim for reasonable accommodations. For me to hold otherwise would be to command police everywhere to retain a psychiatrist or social worker to take the first crack at every hostage situation, no matter the threat to life or limb. Neither the text nor the intent of the Act contemplates such commandeering of police authority in life-threatening situations.

### C. Failure to Train or Supervise Claim Under the ADA

Plaintiff has also pursued a claim that the DPD did not adequately train or supervise its officers and thereby prevented them from making reasonable accommodations as required by the statute. Some courts have found such claims cognizable under the statute, *Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232, 237-39 (M.D. Pa. 2003), while others have not, *Thao v. City of Saint Paul*, No. 03-5306, 2006 U.S. Dist. LEXIS 19409, at *25-26 (D. Minn. April 13, 2006). Plaintiff relies heavily upon the *Schorr* case, both in her brief and at oral argument, for the proposition that failure to train cases are cognizable under the ADA. But the *Schorr* case has been rightly criticized by other courts for its overbreadth in interpreting the ADA. *Thao*, 2006 U.S. Dist. LEXIS 19409, at *25-26 (declining to follow *Schorr* given the plain text of § 12132);

*see Sallenger v. City of Springfield*, No. 03-3093, 2005 U.S. Dist. LEXIS 18202, at *90-92 (C.D. Ill. Aug. 4, 2005). The Fourth Circuit has not extended the ADA to encompass failure to train cases, *see Hainze*, 207 F.3d at 801, and the Eighth Circuit has twice declined to decide the issue. *See Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007); *Thao v. City of Saint Paul*, 481 F.3d 565, 567-68 (8th Cir. 2007).

I find no basis in the Act's text supporting a failure to train claim under the ADA. It is almost tautological at this point to state that when interpreting a statute, one must always begin with its plain language. *Discover Bank v. Vaden*, 489 F.3d 594, 604 (4th Cir. 2007). By its plain language, a violation of Title II does not occur until there has been an exclusion or denial of participation in, or the benefits of, a public entity's services, which manifestly occurs well *after* any training of the public entity's agents.[3] *Thao*, 2006 U.S. Dist. LEXIS 19409, at *25-26. The act or omission involved in failing to train police officers to deal with mentally ill individuals may have a disparate impact on such individuals as a class, but can never by itself equate to a specific act of intentional discrimination against a particular plaintiff. *Id.*; *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005).

Furthermore, I cannot countenance Plaintiff's failure to train claim under the ADA even if it were compatible with the text of the Act, since I concluded *supra* that no reasonable accommodations were due Hunt under the exigent circumstances present in this case. It is therefore irrelevant whether the DPD effectively trained its officers in reasonably

---

[3] The relevant statutory language from Title II defining a violation is: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Case 4:03-cv-00039-JLK-mfu   Document 227   Filed 10/02/07   Page 8 of 9   Pageid#: 3241

accommodating mentally ill hostage takers, since no such accommodations are required by law. Even were it a viable claim, Plaintiff has not made a threshold showing that a failure to train or supervise the officers in this case was the proximate cause of Hunt's death, despite its being a possible but-for cause. Hunt's threatening the life of Lt. Wyatt acted as the superseding cause of Hunt's death, and the ensuing actions by the Emergency Response Team have been adjudged as conclusively reasonable by the Fourth Circuit. *See Waller*, 212 Fed Appx. at 171.

## IV. CONCLUSION

For the foregoing reasons, I will **GRANT** summary judgment for the Defendant. Judgment will be entered for the Defendant, and the Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record

Entered this 2nd day of October, 2007.

s/Jackson L. Kiser
Senior United States District Judge
